UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| LILA LEONARD AND ) | |
| GERALD LEONARD, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 5:17-cv-51 |
| ) | |
| SHIELD HOTEL MANAGEMENT, LLC ) | |
| d/b/a HAMPTON INN, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER ON MOTION TO DISMISS**
(DOC. 9)

In this diversity action, plaintiffs Gerald Leonard and his wife Lila Leonard, both residents of Vermont, sue defendant Shield Hotel Management, LLC ("Shield" or "hotel") for negligence. They allege that while staying with their grandchildren at defendant's hotel in Massachusetts, the children discovered a used hypodermic needle in the room. (Doc. 5 ¶¶ 25–26.) Mrs. Leonard "stuck" herself with the needle while attempting to dispose of it. (*Id.* ¶¶ 28–30.) The complaint alleges that defendant is subject to personal jurisdiction in Vermont because defendant's hotel staff formed a business relationship with plaintiff Gerald Leonard's employer. (*Id.* ¶¶ 11–18.) This relationship developed into an individual relationship between the hotel and Mr. Leonard, constituting significant contacts with Vermont. (*Id.* ¶¶ 21–24.) Shield has filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(2), asserting that it is not subject to personal jurisdiction in Vermont. (Doc. 9.) The court heard argument on the motion on June 12, 2017, at which time the motion was taken under advisement.

1

## Legal Standard

In resolving the personal jurisdiction issue on the bases of a motion to dismiss and supporting affidavits, the court considers whether the plaintiff has made a prima facie showing of jurisdiction over the defendant. *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001). Allegations of the parties are "construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party." *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993).

## Facts

Defendant Shield Hotel Management, LLC owns the Hampton Inn in Greenfield, Massachusetts. (Doc. 9 at 4.) In an effort to attract business, Hampton Inn negotiated a corporate discount with a company known as Kennametal to entice Kennametal employees to stay at the hotel. (Doc. 10 at 2.) Mr. Leonard was an employee of Kennametal for more than sixteen years. (Doc. 10-1 ¶ 2.) He then became a contractor with the company. (*Id.* ¶ 3.) His employment required him to travel frequently to Kennametal's Massachusetts locations. (*Id.* ¶¶ 4–5.) Mr. Leonard stayed at the hotel approximately seventeen times in recent years, staying a total of twenty-three nights. (*Id.* ¶ 5.) He received a discount because of his association with Kennametal. (*Id.* ¶¶ 6, 7, 10.)

On a previous business trip, Mr. Leonard complained about a smoky smell in his room. (Doc. 10-4.) He expressed his displeasure by answering a survey sent by the hotel. (*Id.*) Hotel staff responded with an email apologizing and encouraging Mr. Leonard to return to the hotel. (*Id.*) The hotel stated it would "make sure [the] housekeeping department pays extra care." (*Id.*)

In response, Mr. Leonard spoke of recognizing hotel staff members and of his intention to come back to the hotel. (*Id.*)

At the time of the incident, Mr. Leonard had traveled to the Hampton Inn on business for Kennametal. (Doc. 10-1 ¶ 9.) He was accompanied by his wife and grandchildren. (Doc. 5 ¶ 25; Doc. 10-1 ¶ 9.)

## Analysis

### I.   Specific Personal Jurisdiction

Specific personal jurisdiction must comply with a defendant's due process rights under the Fourteenth Amendment. *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016). In order to satisfy a defendant's due process concerns, a plaintiff must make "a threshold showing of minimum contacts at the first stage of the inquiry." *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010). The court must also apply a standard of fairness and reasonableness as to not violate "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (citing *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The minimum contacts threshold is met if a plaintiff can show that a defendant purposefully availed itself of contact with the forum state and as a result could reasonably foresee being subject to suit in that state. *Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cty.*, 480 U.S. 102, 109 (1987); *Real Good Toys, Inc. v. XL Mach. Ltd.*, 163 F. Supp. 2d 421, 424 (D. Vt. 2001). These minimum contacts are to be examined in the "totality of the circumstances." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 62 (2d Cir. 2012) (citation omitted); *see also Chloé*, 616 F.3d at 164. Vermont's long-arm statute, 12 V.S.A. § 913(b), represents a "clear policy to assert jurisdiction over individual defendants to the full extent permitted by the Due Process Clause."

*Bechard v. Constanzo*, 810 F. Supp. 579, 582–83 (D. Vt. 1992). For the reasons discussed below, the court concludes that minimum contacts are present, and that exercising jurisdiction will not violate traditional notions of fair play and substantial justice.

### A.   Minimum Contacts

The conditions necessary to avoid dismissal under Fed. R. Civ. P. 12(b)(2) have been met by the facts asserted in plaintiffs' complaint, its response to this motion, and supplemental evidence including an affidavit and email correspondence. The facts asserted make a threshold showing that defendant established minimum contacts in Vermont by deliberately developing and maintaining a commercial relationship with Kennametal to host Vermont associates and then by creating an individual relationship with Mr. Leonard.

Defendant argues that the alleged tort arose out of or related to defendant's business activities in the state of Massachusetts, not Vermont, and that there exists no nexus between defendant and Vermont. (Doc. 9 at 3.) Where the incident occurred is only one factor to be considered among others in "totality of the circumstances" when determining personal jurisdiction. *Licci*, 732 F.3d at 170. The court finds numerous other factors demonstrating that defendant established minimum contacts with Vermont, even though the incident occurred outside the state.

Defendant established the requisite level of minimum contacts in Vermont by purposefully directing commercial activity to entice Vermont residents to stay at its Massachusetts hotel. Plaintiffs assert that defendant's hotel and Kennametal negotiated "a corporate discount for Kennametal employees and consultants who were traveling from Vermont to Greenfield, Massachusetts," from which defendant benefitted financially. (Doc. 10 at 2.) According to plaintiffs, it was common for Kennametal employees to stay at the hotel.

4

(Doc. 10-1 ¶ 12.) The court can reasonably infer that defendant approved the awards program to encourage Kennametal's employees to stay at its hotel. *See Dall v. Kaylor*, 163 Vt. 274, 275–77 (1995) (Maryland horse breeders subject to long-arm jurisdiction in Vermont based on advertisements which reached Vermont residents).

At the time of the incident, Mr. Leonard was still associated with Kennametal as a consultant, despite the closing of Kennametal's Vermont location. (Doc. 10-1 ¶ 4.) He continued to travel to Massachusetts on Kennametal business frequently. (Doc. 10-1 ¶¶ 4, 5.) Mr. Leonard states that he received a discount at defendant's hotel because of his association with Kennametal. (*Id.* ¶¶ 6, 10.) It was because of this corporate relationship between defendant's hotel and Kennametal that he selected defendant's hotel. (Doc. 10 at 2.)

A defendant's contacts with the forum state can be strengthened when the relationship between an out-of-state defendant and an in-forum-state plaintiff is transformed from a corporate relationship to an individual relationship. For example, in *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 315, 318 (3d Cir. 2007), the defendant, a hotel operator, continuously cultivated its relationship with plaintiff after his previous stay at defendant's hotel in Barbados, resulting in the plaintiff returning to the hotel where he was injured during his second stay. Defendant had cultivated its relationship with plaintiff by mailing seasonal newsletters and brochures to plaintiff's Pennsylvania home, and later they "traded phone calls" for the purpose of persuading plaintiff to return to defendant's hotel and utilize the hotel's spa. *Id.* at 315. The court found that defendant had "deliberately reached into Pennsylvania to target . . . its citizens." *Id.* at 318.

Defendant's contacts with Vermont were strengthened when staff at defendant's hotel reached out to Mr. Leonard, transforming the relationship from a general, corporate relationship that involved Mr. Leonard as an associate of Kennametal to an individual relationship between

staff at defendant's hotel and Mr. Leonard. After receiving Mr. Leonard's complaint regarding the smoky smell in his room, hotel staff responded to Mr. Leonard with a personalized email apologizing and encouraging him to return to the hotel, going so far as to state that they would "make sure [the] housekeeping department pays extra care." (Doc. 10-4.) Hotel staff likely knew that Mr. Leonard was a Vermont resident based on the Vermont address clearly indicated in the signature block of Mr. Leonard's emails and the history of Mr. Leonard's stays at the hotel. (*Id.*) Through these communications, plaintiff was persuaded to return to the hotel. (*Id.*)

In addition to defendant's minimum contacts in Vermont, plaintiffs must also demonstrate a reasonable foreseeability that defendant would be subject to suit in Vermont. "[T]his 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King*, 471 U.S. 462, 472–73 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). "When . . . sellers intentionally act to advance their commercial interest, they should reasonably anticipate being sued in Vermont if a dispute arises from these activities. *Dall*, 163 Vt. at 276 (citing *N. Aircraft, Inc. v. Reed*, 154 Vt. 36, 43 (1990)). Defendant had fair warning of potential suit in Vermont because it chose to advance its commercial interest by directing its marketing activities at residents of Vermont employed by Kennametal and then by creating a personal relationship with Mr. Leonard to encourage him to return to the hotel. (Doc. 10-1 ¶ 10.)

Defendant argues that Mrs. Leonard, not Mr. Leonard, is the primary plaintiff and the alleged victim of the neglect. They point out that her relationship with the defendant is fundamentally different from Mr. Leonard's in that she was never encouraged to stay at defendant's hotel. They argue that there are no sufficient minimum contacts to establish personal jurisdiction

6

over Mrs. Leonard. The court disagrees. As already discussed, plaintiffs have made a threshold showing that defendant established minimum contacts in Vermont in its corporate relationship with Kennametal to entice Vermont residents on Kennametal business to stay at the hotel. This alone establishes defendant's minimum contacts in Vermont. Further, defendant could reasonably expect that family members may accompany guests who stay at the hotel. It has a duty of reasonable care for all of its lawful guests. *See Tobin v. Slutsky*, 506 F.2d 1097, 1103 (2d Cir. 1974) (holding that defendant, a hotel owner, had a duty of reasonable care and was liable for the molestation of plaintiff and guest's 15-year old daughter by hotel staff). The contacts which gave rise to personal jurisdiction with respect to claims made by the primary guest (Mr. Leonard) apply equally to claims by family members traveling with him.

B.   **Fairness and "Reasonableness" Factors**

The court finds that, in exercising personal jurisdiction over a defendant, fairness and "reasonableness" factors are present so as to avoid any violation of defendant's due process rights. The court considers five "fairness" factors as part of its "reasonableness" analysis:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996).

First, the burden that the exercise of jurisdiction will impose on defendant is not significant enough to be unreasonable. *See id.* Defendant is a well-resourced entity with the capabilities to participate in a legal dispute in Vermont. It has secured legal representation from attorneys who are members of the Vermont and federal bars. Its hotel is located a few miles south of the Vermont state line.

Second, Vermont has a strong interest in extending long-arm jurisdiction to a case like this. *See id.* Vermont has an interest in protecting its residents and providing redress for alleged negligence while traveling to nearby states, especially when such alleged negligence pertains to public health concerns surrounding the potential transmission of diseases (borne by hypodermic needle sticks) upon return of its residents.

Third, plaintiffs have a strong interest in obtaining convenient and effective relief in their home state. *See id.*

Fourth, the court seeks the "most efficient resolution of the controversy." *Id.* Plaintiffs (constituting some of the witnesses) and evidence (e.g. medical records from follow-up examinations) are within the forum state of Vermont. (*See* Doc. 10 at 5.)

Fifth, the court finds the fairness factor of "substantive social policies" has minimal relevance to the facts at hand. *Metro. Life*, 84 F.3d at 568.

**Conclusion**

Defendant Shield Hotel Management, LLC's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 9) is denied without prejudice.

Dated at Rutland, in the District of Vermont, this 19 day of July, 2017.

Geoffrey W. Crawford, Judge
United States District Court